Good morning, your honors. James Crawford on behalf of Stacey Eldridge. Your honors, while I was preparing for the argument over the weekend, I noticed there's a possible issue that may have developed a supplemental brief and was decided approximately a month and a half ago. And I assume the court's familiar with the decision or I could get the court, okay. Well, during the trial, Ms. Kendrick, there was testimony that she was detained. She was interviewed and while she was interviewed, she made certain admissions. Ms. Kendrick didn't testify at the trial. I would like to have an opportunity under Crawford to address that issue of the unconfronted statements. During the time of trial, it was probably properly admitted as a co-conspirator exception or an admission. However, at this point, in light of Crawford, I think additional briefing would be necessary on that point. Well, I'll leave that to the presiding judge to decide. But didn't Crawford make an exception within the explanation of the text for some of the traditional things like a co-conspirator exception? It mentioned certain statements made by co-conspirators, but it didn't exempt them necessarily. It indicated that the only firmly rooted exception or the only exception that existed at the time that the Framers enacted the Sixth Amendment was the Dine Declaration. Now, there was no co-conspirator exception at the time that the Framers adopted the Sixth Amendment. So I believe it would be a meritorious issue. I believe it's an issue that needs further development and further research and an opportunity to present to the court. I think if you really want to do that, you're going to have to make it a more formal submission than a requested oral argument. We can deal with it. I'd be happy to file a motion in addition to the brief. Do whatever you think you should, but I'd focus your remaining time on what's up here now. Thank you, Your Honor. I'd like to focus the Court probably on the most important issue in the case, which was Judge Takasugi's ruling on the motion for reconsideration. We submit that originally when he dismissed the indictment for undue delay, he was proper. In this case, there's been a lot of mention of the customs inspector that was never located. But in addition, after reading through the briefs and through the motions, the response that Eldridge indicated would be prepared to testify that she denied involvement or ended in Los Angeles by Erin Cain McKnight. So there's actually three witnesses that the defense has denied an opportunity to present based upon the undue delay in prosecuting this case. See, I mean, the heart of this thing, though, is that those witnesses would be germane on the importation charge. Well, I believe we're going to have an opportunity to interview these statements by these witnesses, excuse me, and obtain their statements. Well, I know, but my point still remains. Why is it wrong? Why is it wrong? Yeah. I don't believe it was an adequate remedy. I believe the initial remedy posed by the judge of dismissing the indictment was proper.  I believe the initial remedy posed by the judge of simply excluding the testimony by the co-defendant regarding the packaging of the ecstasy within the bag at the time that it was transported, that simple exclusion of that testimony was inadequate. Because, as the Court also noticed, when Ms. Buna testified, she mistakenly or inadvertently, and I'm going to submit that it was inadvertently, I don't believe it was an intentional violation of any court order, but she inadvertently indicated that there are cases or are suit cases or something along those lines. And, again, that illustrates that based upon the human error and the fallacy that occurred in that particular case, it undermines ever more how the remedy that the district court judge imposed was inadequate, because it did not serve to fully insulate Ms. Eldridge from the disadvantage that she was placed at based upon the undue delay in prosecuting the case. Are you making some argument other than collaterals? Well, what argument? What is the pigeonhole for the argument that you're just making, that there was what? What was the error? The error was that it was an inadequate remedy. The remedy of simply excluding Ms. Buna's testimony that Ms. Eldridge had packaged or one of the other persons in France had packaged the ecstasy into her luggage, I believe that the remedy was inadequate. The appropriate remedy was the one that Judge Takasuki initially ruled upon, which was the dismissal of the third superseding indictment. Okay. If I may, and to the next issue, Your Honor, was the sufficiency of the evidence. And I believe if we look at UMAGOT, United States v. UMAGOT, I believe that's the controlling case. Ms. Eldridge was nothing more than a mule. She was nothing more than a carrier. She was not fully involved in the conspiracy. She received no benefits from the conspiracy. She was promised $10,000 by, I believe it was Erin Cain McKnight. She didn't even receive the money that she was promised to assist them in their actions. There was a two- Well, it was just a bad deal. It didn't mean that she didn't realize that there was a pretty big operation here, and she went to France to help it, and she went to New York to help it, and she went to someplace to get a birth certificate, and she went to all sorts of trouble to participate. Well, there was a trip to France, and then there was a trip to New York, and there was those two isolated acts of participation. But other than that, she was not a central figure in the conspiracy. Her role and her involvement in the conspiracy was for a relatively short period of time, and based upon that, I would submit that there was insufficient evidence. Okay. And if the Court has any questions on anything, I'd be prepared to answer. I think not at the moment, so why don't we hear from the government, and we'll get back to you on rebuttal. Okay. Thank you. May it please the Court. Michael Lowe for the United States. Your Honors, the district court here correctly reinstated the charges against the defendant. It did not abuse its discretion for reconsideration. And as an initial matter, the defendant's first argument relating to that issue is that somehow the district court lacked jurisdiction because it had dismissed the charges initially. I'm not going to spend much time on it, except to note that the case law is clear that the district court had jurisdiction for 30 days to reconsider its ruling. It's actually a Ninth Circuit case that says that. Directly on point, the case is Villaparada. Villaparada. In any event, Your Honor, that leaves us with the issue of whether or not the district court's reinstatement was an abuse of discretion. And the Ninth Circuit law on this issue is to the effect that a reconsideration motion can be granted if necessary to correct clear error or to correct manifest injustice. There's also a local rule, Local Rule 7-18, which permits motions for reconsideration. We submit that there's – it's hard to imagine a more clear-cut case where the district court committed clear error or manifest injustice. And that's because Judge Takasugi admitted in granting the motion for reconsideration that he simply forgot that this defendant had been charged in two conspiracy counts and that she had been charged with aiding and abetting the importation of MDMA. He was operating under his own mistaken impression that all she was charged with was a substantive count of importing MDMA and that therefore if she was prejudiced by the customs inspector's lost testimony relating to her own importation, that charge would have to be dismissed. He just forgot. And so under this court's law, it is clear that Judge Takasugi realized a mistake was proper and acted within his discretion in reinstating the charges against the defendant. And the list of inspectors was still extant, right? It was still in existence? The list of inspectors had been produced to the defendant prior to her – the hearing on her motion to dismiss the second time. Thereafter, at that hearing where Judge Takasugi did grant the motion, the defendant for the first time advised us of a discretion. So in addition to arguing when we moved to reconsider that the court had committed clear error and that it had failed to consider these other charges against the defendant, we also put in new evidence in the form of the declarations from the only two possible customs inspectors that could have been the person that defendant claimed searched her suitcase. And so when you look at those factors, Judge Takasugi clearly did not have used his discretion when he found that he had made a mistake. And even though he didn't grant the motion on all of the grounds that we had urged, he did grant the motion to reconsider. We feel he should have also granted on the grounds that he had clearly erred because the law in this circuit is quite clear that the defendant's claim of prejudice was pure speculation. And we tried to point that out to Judge Takasugi. He didn't agree with us. But that's another ground upon which this Court can also affirm his reinstatement of the charges because it can look to the record and see if, in fact, there was a basis supported in the record that would support the reinstatement of the charges. So there's multiple grounds upon which this Court could find that Judge Takasugi, in fact, did not have used his discretion. Which takes us to the defendant's claim that Michelle Buno's inadvertent testimony, her inadvertent slip, somehow requires reversal. And at issue was a statement that Ms. Buno made to the effect that she used the phrase our suitcases. And that was in response to one of my questions, the Paris trip, and whether or not she could feel pills in the socks that she was packaging. And she said, yes, they felt like the ones that were in our suitcases in Paris. And after that, I immediately moved on to a different line of questioning. I asked her about money because I realized she had just testified to a previous topic. At a recess, we addressed this issue. And defense trial counsel noted for the record that Ms. Buno's statement was inadvertent. And then he offered to cure it. He said, I can cure this if I can be permitted to ask Ms. Buno if she really meant to say my suitcase without being deemed to have opened the door to testimony about what was in Eldridge's suitcase. Because the district court's ruling was that if defense counsel asks a witness specifically what was in Eldridge's suitcase, that witness can answer it. So we instructed our witnesses, I specifically instructed Buno and the others, that you're not allowed to testify that Eldridge had MDMA in her suitcase. But if the defense attorney asks you that question, you can answer it. So defense counsel comes up with the suggestion to cure any possible prejudice, if he can ask Buno without being deemed to open the door. I agreed to that. He asked that question. Buno retracted her testimony and said, yes, I meant to say my suitcase. In closing argument, defense counsel argued there's not a shred of evidence that my client had MDMA in her suitcase. And he even pointed to Buno's retraction of her slip. So with respect to that statement, there was no government misconduct or witness misconduct. And certainly it is not more probable than not that the statement of Ms. Buno materially affected the jury's verdict. With respect to the defendant's claim of insufficient evidence on the conspiracy count, Judge Reimer, I think you are correct that this is very distinguishable from Umagat. There were a lot more activities which this defendant engaged in. And in addition, she was charged in two different conspiracies, not just one conspiracy, conspiracy to import in that case. With respect to the claim that the government committed misconduct by questioning Ms. Eldridge about, well, there was one question that I asked, and it was whether or not she had used the younger Buno to bring in the pills to assume the risk. And I'm going to recognize right here I shouldn't have asked that question. I don't, at the time, it seemed like a good question to ask. When we got to sidebar and the defense stated their position, I thought about it some more and I said, okay, you know what? I really shouldn't ask that question. I agree voluntarily I'm not going to ask any more questions like that. Excuse me, like that. And I am going to not make that argument in closing. So we're left with a situation where government counsel asks a question that he shouldn't have. And the question then becomes, is that misconduct? And if so, is it more probable than not that the misconduct materially affected the jury's verdict? And in analyzing the first question, is it misconduct, this Court's case law is that you need to examine the conduct of the government in the context of the entire trial. And what we have here is one question in the context of a long, complicated case, which was objected to by defense counsel, where the witness answered no, where the government immediately ceased that line of questioning, where the government never made that argument, where the government voluntarily agreed not to do those things, even though it was an order to do so by the district court, and where the district court instructed the jury that questions of the attorneys are not evidence. So if you look at the cases we've cited in our brief, it's clear that in this type of was not misconduct when viewed in the context of the entire trial. And then even if the court wants to find that this was misconduct, the relevant inquiry then is whether or not that it is more probable than not that that material the district court offered the defendant the opportunity to argue that point in closing, said if you think this needs to be addressed in closing, you feel free to argue it. And the insignificance of this question in the context of the entire trial is demonstrated by the fact that trial counsel never raised this issue again in front of the jury, didn't make anything of it. The evidence against Ms. Eldridge here was staggeringly overwhelming. I've even quoted in our brief, he acknowledged to the jury during closing that Ms. Eldridge was buried, that the evidence was overwhelming, that three witnesses buried her with their testimony. And that's the case here. The one question simply could not be said to be more probable than not to have materially, excuse me, affected the jury's verdict. The other issues Ms. Eldridge raises, she also challenges the admission of Wayne Sanders' testimony regarding her drug usage. And for the record, that was never objected to at trial, so the plain error standard applies to that claim. Two other witnesses testified that Ms. Eldridge had also used MDMA. So even, and Ms. Eldridge has not challenged their testimony on appeal, so even if you were to find somehow that there was error, that it was plain from the admission of Wayne Sanders' testimony regarding defendant Eldridge's drug use, the fact remains that two other witnesses had already testified to that, and their testimony is not being challenged. So certainly substantial rights were not affected here, because the testimony had come in in any event. And we certainly do not agree with her claim that this was error or that it was plain, because in the context of this trial, her drug use was inextricably intertwined with the evidence in the case. And that's because she, for one thing, had extensively cross-examined Dreszlinski, Buno, and Sanders regarding their drug use and their drug safety. In addition, it helps explain the fact of why Dreszlinski would approach Stacy Eldridge to recruit her to smuggle drugs, because he's doing drugs with her. It explains the fact why Buno would be approached by Stacy Eldridge and asked to go on a trip to smuggle drugs, because they do drugs together all the time, and Eldridge knew she can ask Buno this without Buno being shocked. And it explained why Eldridge would go and confide in Wayne Sanders, because he was her drug dealer. He was the one supplying her with the drugs. And so it wasn't something that would be unusual. She wouldn't think that this is a danger for me to tell this guy that I just smuggled or had been involved in smuggling drugs. The issue is I think I've done. So if there are no further questions from the Court, I submit on that. Thank you. Your Honors, I believe when we look at Ms. Buno's testimony, although it was inadvertent and I've conceded to the Court that it was inadvertent, and I believe trial counsel did as well, I believe still that her testimony illustrates the deficiency or why the remedy that Judge Takasuki imposed was not adequate and why the original remedy that he did impose, which was dismissal of the third superseding indictment, was the appropriate remedy from the beginning. As to the sufficiency of the evidence, we still strongly believe that there was two isolated trips involving Ms. Eldridge. There was the trip from Las Vegas or L.A. to Paris, and then there was the other trip to New York. But other than that, there was no other evidence connecting her to the conspiracy. She was not profiting from her actions. She was not intimately involved with the conspiracy. She was not intimately involved with the co-conspirators. There was no long duration or period from which that she could be connected intimately with the co-conspirators. But rather, she had these two isolated transactions to which she was involved in, where she basically got duped by Aaron K. McKnight. And then with regard to the government indicates, there was just one question and one statement by Ms. Funo. But again, it goes back to the adequacy of the remedy that Judge Takasaki imposed. So unless the Court has any questions or any matters it would like me to focus on, I'll submit. Okay. Thank you, Your Honors. Thank you, Counsel. The matter just argued will be submitted. And we'll... Your Honor, with regard to my request, though, for the matter to be submitted, I do have a request to file a supplemental brief. Will there be a delay in submission? No. All right. I guess if you want to file a supplemental brief in a week, you can apply in a week. I would, Your Honor. Although I didn't address this based on the Court's comments, but I don't think this is an issue at all in this case, given the defendant's position at trial. That may well be the case. It actually, I think, would be more efficient for all of us to just deal with it, rather than have it come up in some other form at some other time. If the Court would be willing to deal with my submission today, I'd be more than happy. Thank you. I mean, if you want to write a letter brief on it? I'd prefer if I may. You would prefer that? A letter brief, yes. That's what I'm saying. Okay. How about a week to do it? Certainly. All right. And then a week to reply. Yes, Your Honor. So we will defer submission for two weeks. Thank you, Your Honor.
judges: Browning, Rymer, Graber